# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WENDY MANSFIELD,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Criminal Action No. 09-055 (CKK)
Civil Action No. 10-193 (CKK)

FILED
AUG - 1 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(August 1, 2011)

Presently before the Court is Petitioner Wendy Mansfield's [27] Motion to Vacate, Set Aside, or Correct her sentence pursuant to 28 U.S.C. § 2255. Mansfield pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 pursuant to a plea agreement entered on April 30, 2009. On September 17, 2009, this Court sentenced Mansfield to eighteen months of imprisonment followed by thirty-six months of supervised release, a fine of $25,961, a special assessment of $100, and restitution in the amount of $150,100, of which $150,000 had been previously paid by Mansfield. Mansfield filed her § 2255 motion on February 1, 2010, arguing that her judgment of conviction should be set aside because: (1) the insurer of the private company which she defrauded released its claims against her, thereby rendering the Court's judgment invalid under the Double Jeopardy Clause of the Fifth Amendment; and (2) she received ineffective assistance of counsel from her attorney, who failed to inform Mansfield that she was not admitted to practice before this Court. The Government filed an opposition to

Mansfield's § 2255 motion, and Mansfield filed a reply.[1] Based upon the parties' briefs, the applicable case law and authorities, and the record as a whole, the Court finds that Mansfield's claims are wholly without merit. Accordingly, the Court shall DENY Mansfield's § 2255 motion.

## I. BACKGROUND

From 1999 to 2008, Mansfield worked at the Association of Fish and Wildlife Agencies (the "Association"), first as an accountant and later as the Chief Financial Officer. *See* [9] Statement of the Offense[2] at 1. While employed there, Mansfield maintained an Association credit card to be used for official business and travel. *Id.* Between July 2004 and July 2008, Mansfield charged $176,061 in personal expenses to her company credit card for which she did not reimburse the Association. *Id.* The Association terminated Mansfield in August 2008, and the Government began investigating Mansfield shortly thereafter. In September 2008, Mansfield hired attorney Gladys M. Weatherspoon ("Weatherspoon") to represent her in connection with the alleged theft charge involving the Association. *See* Pet'r's Reply, Ex. (Retainer Agreement). Weatherspoon has been licensed to practice law in the District of Columbia since 1995.

The Government negotiated a plea agreement with Weatherspoon acting as Mansfield's counsel. In a plea offer dated January 21, 2009, the Government contemplated that Mansfield would agree to waive indictment and plead guilty to a one-count information charging a violation

---

[1] In her reply brief, Mansfield asks the Court to grant her summary judgment pursuant to Federal Rule of Civil Procedure 56. Because that rule does not apply in a § 2255 proceeding, the Court denies Mansfield's request for summary judgment.

[2] In accepting her plea agreement, Mansfield stipulated to the facts described in the Statement of the Offense. Mansfield has not challenged those facts in her § 2255 motion.

of 18 U.S.C. § 1343 (wire fraud). *See* Gov't's Opp'n, Ex. A. On February 10, 2009, the Government provided a revised plea offer that specified, *inter alia*, that an offense level of 19 would apply for sentencing guidelines purposes, two levels below the previous plea offer. *See* Gov't's Opp'n, Ex. C. On February 27, 2009, the Government filed the one-count information charging Mansfield with one count of wire fraud, aiding and abetting and causing an act to be done, in violation of 18 U.S.C. §§ 2, 1343. An arraignment and plea hearing were scheduled for March 31, 2009. On March 23, 2009, the Government filed a letter with the Court indicating that the parties had reached a plea agreement; Weatherspoon received a copy of this letter. *See* Gov't's Opp'n, Ex. D.

On March 30, 2009, attorney Donald Terrell ("Terrell") entered an appearance on behalf of Mansfield; his appearance form indicated an association with Weatherspoon's law office. *See* [3] Notice of Attorney Appearance. Terrell's entry of appearance was necessary because at the time of these proceedings, Weatherspoon, although a member of the D.C. Bar, was not admitted to practice before the U.S. District Court for the District of Columbia. On the same date he entered his appearance, Terrell filed a motion to continue the arraignment/plea date, which the Court granted. The Court rescheduled the arraignment/plea hearing for April 21, 2009. On April 21, 2009, Mansfield and Terrell signed the plea agreement. *See* Gov't's Opp'n, Ex. E. In signing the agreement, Mansfield acknowledged that she had read the plea agreement and discussed it with her attorney. *Id.* at 7. She further indicated that she was satisfied with the legal services provided by her attorney in connection with the plea agreement and matters related to it. *Id.* Terrell acknowledged that he had reviewed the plea agreement with Mansfield and discussed its provisions thoroughly with her. *Id.* The Court held a hearing on April 21, 2009; Terrell

appeared on behalf of Mansfield at the hearing.³ Because the parties indicated that there was a question regarding the plea agreement's waiver of appeal provision, the Court rescheduled the arraignment/plea hearing for April 30, 2009. The plea agreement signed on April 21, 2009 was never filed with the Court. On April 23, 2009, the Government sent Weatherspoon and Terrell a letter indicating that the plea agreement had been revised. *See* Gov't's Opp'n, Ex. F. Mansfield and Terrell signed the revised plea agreement on April 30, 2009.

On April 30, 2009, the Court arraigned Mansfield and conducted the plea hearing. During the hearing, the Court informed Mansfield that she could consult with her lawyer at any time. *See* 4/30/2009 Hr'g Tr. at 4-5. Mansfield told the Court that she had reviewed the plea letter with her lawyer. *See id.* at 9. After pleading guilty to the charge in the information, Mansfield told the Court that she had fully discussed the charge and the case in general with her lawyer. *See id.* at 11. Mansfield told the Court that she had had enough time to talk with her lawyer to discuss the case, the plea offer, and whether or not to accept it; she further told the Court that she was completely satisfied with the services provided by her lawyer in the case. *Id.* The Court explained the various rights that Mansfield would be giving up by pleading guilty, and Mansfield acknowledged that she understood them. *See id.* at 11-15. The Government recited the factual basis for the plea, and Mansfield agreed with the Government's recitation. *Id.* at 15-18. The Court then reviewed the factual basis for the plea with Mansfield. *Id.* at 19-24. The Court then found that the Government had proffered evidence with respect to each element of the

---

³ Mansfield claims in her § 2255 motion that she had never met Terrell before April 30, 2009. However, the record clearly shows that Mansfield was present with Terrell at the April 21, 2009 hearing. Furthermore, the signed plea agreement dated April 21, 2009 confirms that Mansfield had met Terrell at least as early as that date.

offense beyond a reasonable doubt and that Mansfield had admitted conduct that met the elements of the offense. *Id.* at 24.

The Court next reviewed the terms of the plea agreement. Mansfield confirmed to the Court that she had discussed the provisions in the plea agreement with her counsel. *See id.* at 31-32, 38. Mansfield confirmed that no one had forced, threatened, or coerced her in any way into entering a plea of guilty. *Id.* at 44. Mansfield told the Court that she understood that the agreement resulted from negotiations between her lawyer and the Government's lawyer. *Id.* Mansfield said she was voluntarily entering the plea, and she told the Court that there was nothing she did not understand about it. *Id.* at 45. Mansfield pled guilty to the charge, and the Court accepted the plea. *Id.* at 46.

On August 18, 2009, Terrell filed a Memorandum in Aid of Sentencing on behalf of Mansfield. *See* [18] Def.'s Mem. in Aid of Sentencing. Among other things, the memorandum argued that Mansfield should receive a sentence well below the guideline range because of her background and personal characteristics. It also explained that Mansfield had already made restitution to the Association by agreeing to a settlement with its insurer, the Hartford Casualty Insurance Company ("Hartford"). On May 11, 2009, Mansfield executed a Release and Settlement of Claim with Hartford in which Hartford agreed to release all claims against Mansfield relating to her fraud against the Association in consideration for $150,000 paid by Mansfield. *See* Pet'r's Ex. 1 (Release and Settlement of Claim). The memorandum in aid of sentencing also included letters of support from friends and family attesting to Mansfield's character.

On September 17, 2009, the Court sentenced Mansfield to 18 months of incarceration, to be followed by 36 months of supervised release. The Court also imposed a fine of $25,961, a

special assessment of $100, and restitution in the amount of $150,100, with credit due for the $150,000 previously paid by Mansfield.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that his sentence was imposed "in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. § 2255. The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. *See United States v. Frady*, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum.").

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, a district court need not conduct an evidentiary hearing before denying a § 2255 motion when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*; *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal . . . ." Rules

Governing § 2255 Proceedings, Rule 4(b). "[A] district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *Morrison*, 98 F.3d at 625.

### III. DISCUSSION

Mansfield has asserted two claims in her § 2255 motion. First, Mansfield contends that her civil settlement with the Association's insurer constitutes a punishment against her for purposes of the Fifth Amendment's Double Jeopardy Clause, thereby rendering her conviction by this Court unconstitutional. Second, Mansfield contends that she received ineffective assistance of counsel from her first attorney, Gladys Weatherspoon, because, *inter alia*, she was not admitted to practice before this Court and Mansfield had to be represented by Donald Terrell. The Court shall address these claims below.

*A.   Mansfield's Double Jeopardy Claim*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[4] affords a criminal defendant with three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (citations omitted).

In this case, it is clear that there is only one criminal punishment at issue, which is the

---

[4] "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V.

sentence imposed by this Court following Mansfield's guilty plea. Mansfield's civil settlement with Hartford for restitution does not constitute a criminal punishment that is protected by the Double Jeopardy Clause. Mansfield appears to have been confused by the release language in the settlement agreement through which Hartford agreed not to pursue any claims against her relating to her fraud against the Association. That contract is a civil agreement between Mansfield and Hartford, and it does not preclude the United States government from seeking criminal penalties against Mansfield for her misconduct.[5] Accordingly, Mansfield's claim under the Double Jeopardy Clause lacks merit.

    B.    *Mansfield's Ineffective Assistance of Counsel Claim*

To establish a claim for ineffective assistance of counsel, Mansfield must show (a) that her counsel's performance fell below "an objective standard of reasonableness" defined by "prevailing professional norms," and (b) that she was prejudiced by her counsel's performance, such "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court need not address both the deficient performance and prejudice components of the inquiry if there has been an insufficient showing on one prong. *Id.* at 687.

Mansfield's chief complaint appears to be that Weatherspoon did not warn her that

---

[5] Mansfield also claims in her reply brief that she was not able to explain her civil settlement to the Court during the plea hearing. However, the record clearly shows that Mansfield did in fact tell the Court about the $150,000 payment to Hartford during the plea hearing. *See* 4/30/2009 Hr'g Tr. at 21. Furthermore, her restitution was credited and decreased by the Court in the amount she paid in her civil settlement. Hartford indemnified the Association for its monetary loss due to Defendant's conduct. Hartford then sought reimbursement from Mansfield and entered into its civil settlement.

criminal charges might be filed against her and did not inform her until she appeared in Court that she would have to be represented by Terrell because Weatherspoon was not admitted to practice before this federal court.[6] Mansfield does not argue that she received ineffective assistance from Terrell, and she has not identified any errors in Terrell's representation or any prejudice that she suffered as a result of Terrell's representation of her.[7] Rather, Mansfield complains that Weatherspoon "fraudulently concealed" her lack of credentials and that Weatherspoon failed to conduct any investigations prior to the filing of criminal charges. However, Mansfield has failed to explain how she was prejudiced by Weatherspoon's inability to represent her before this Court or by Weatherspoon's alleged failure to investigate the charges. Mansfield appears to be arguing that Weatherspoon was ineffective because she failed to prevent the Government from criminally charging Mansfield with fraud. But Mansfield admitted on the record that she was guilty of wire fraud—an admission that she has not challenged in her § 2255 motion—and she knowingly and voluntarily entered into the plea agreement negotiated by Weatherspoon and Terrell. In light of her admissions on the record, Mansfield cannot establish that she was prejudiced by Weatherspoon's alleged neglect. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Accordingly, the Court finds that Mansfield's claim of

---

[6] Weatherspoon is a member of the D.C. Bar and therefore is authorized to practice law in the District of Columbia. However, in order to appear before the federal court in D.C., Weatherspoon is required to become a member of the bar of the federal court, which is separate and distinct from the D.C. Bar.

[7] In fact, Mansfield claims that if Terrell had represented her from the beginning, she would have been able to resolve her dispute with the Association and avoid criminal charges. *See* Pet'r's Reply at 7.

ineffective assistance of counsel is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mansfield's claims that her sentence was imposed in violation of her Sixth Amendment right to counsel and her Fifth Amendment right to be free from double jeopardy lack merit and do not require an evidentiary hearing. Accordingly, the Court shall DENY Mansfield's [27] Motion to Vacate, Set Aside, or Correct her sentence pursuant to 28 U.S.C. § 2255. An appropriate Order accompanies this Memorandum Opinion.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge